500 So.2d 585 (1986)
Leslie PEARLSTEIN, M.D., and Robert Thacker, M.D., et al., Petitioners,
v.
John T. MALUNNEY and Earla Malunney, Respondents.
No. 86-2119.
District Court of Appeal of Florida, Second District.
December 10, 1986.
Rehearing Denied January 13, 1987.
*586 Nelly N. Khouzam of Fowler, White Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for petitioners.
Michael R. Karp, Sarasota, and Gary W. Roberts and Theresa A. DiPaola of Ricci & Roberts, P.A., West Palm Beach, for respondents.
John P. Shevock of Gillespie, McCormick, McFall, Gilbert & McGee, Fort Lauderdale, for amicus curiae Academy of Florida Trial Lawyers.
DANAHY, Chief Judge.
Petitioners, defendants in a pending medical malpractice action, seek a writ of certiorari to overturn an order of the trial court which, among other things, declares the prefiling notice requirements of the Comprehensive Medical Malpractice Reform Act of 1985, as set forth in section 768.57, Florida Statutes (1985), unconstitutional. We grant the petition for certiorari.
In brief, the statute mandates that prospective claimants, before filing a formal action for medical malpractice, must serve upon each prospective defendant a notice of intent to initiate litigation. § 768.57(2). As with similarly worded statutory provisions relating to sovereign immunity, the furnishing of such notice is a condition precedent to the institution of a claim. Public Health Trust v. Knuck, 495 So.2d 834 (Fla. 3d DCA 1986). See also Levine v. Dade County School Board, 442 So.2d 210 (Fla. 1983); Dukanauskas v. Metropolitan Dade County, 378 So.2d 74 (Fla. 3d DCA 1979). No suit may be filed for a period of ninety days following the giving of such notice. § 768.57(3)(a). The statute of limitations is tolled during this ninety-day period. § 768.57(4). Upon receipt of the notice, the prospective defendant's insurer or self-insurer must review and evaluate the claim, utilizing one of the several methods set forth in the statute. § 768.57(3)(a). Both the claimant and the prospective defendant must cooperate with the insurer. Further, the claimant may be required to make an appearance before a screening panel or medical review committee or submit to a physical examination. Id. Unreasonable failure of a party to comply with this section justifies dismissal of claims or defenses. Id. At or before the end of the ninety-day period, the insurer or self-insurer must serve the claimant with a response admitting liability, rejecting the claim, or offering a settlement. § 768.57(3)(b). This response must in turn be evaluated by the claimant's attorney, again utilizing the procedures set forth in the statute. § 768.57(3)(d).
In the case before us, respondents filed their complaint without first complying with the notice provisions of section 768.57. Petitioners moved to dismiss the complaint. The trial court denied the motions to dismiss, holding that section 768.57 (1) unreasonably discriminates against medical malpractice litigants, (2) deprives them of their constitutional right of access to the courts, and (3) is unconstitutionally vague. Alternatively, the court ruled that the complaint itself satisfied the notice requirements of the statute.
The Comprehensive Medical Malpractice Reform Act of 1985, Chapter 85-175, Laws of Florida, was enacted in response to a perceived crisis in availability of reasonably-priced health care services, prompted by escalating medical malpractice insurance premiums. We hold, as did the Florida Supreme Court in upholding section 768.50, Florida Statutes (1979), that there exists a valid legislative purpose in insuring the protection of public health by assuring the availability of adequate medical care. Pinillos v. Cedars of Lebanon Hospital Corp., 403 So.2d 365 (Fla. 1981). See also McCarthy v. Mensch, 412 So.2d 343 (Fla. 1982). The burden rests with the challenger to demonstrate that a statutory provision such as section 768.57 is arbitrary or lacks any rational basis. In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980). The respondents have not met that burden in this case.
We find no violation of the "access to the courts" provision of article I, section 21, Florida Constitution; reasonable *587 restrictions may be placed on the exercise of such rights in the public interest. Carter v. Sparkman, 335 So.2d 802 (Fla. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 740, 50 L.Ed.2d 753 (1977). We also reject any suggestion that the statute, by temporarily delaying formal medical malpractice litigation, denies prospective plaintiffs their due process rights or the equal protection of the law. McCarthy v. Mensch.
We further disagree with the trial court's finding that the wording of the statute is fatally vague and ambiguous. Rather, we think the meaning is clear. When the language of a statute is clear and unambiguous and conveys a clear and definite meaning, that statute must be given its plain and obvious meaning. Holly v. Auld, 450 So.2d 217 (Fla. 1984). It is true that the statute does not specify any particular form for the notice beyond the requirement that it be in writing. We do not consider that to be a substantial impediment to the drafting of the required notice. It has been held, albeit in the context of sovereign immunity, that any manner of written notice that satisfactorily describes or identifies the occurrence underlying the claim should suffice. Whitney v. Marion County Hospital District, 416 So.2d 500 (Fla. 5th DCA 1982). In sum, we hold that section 768.57, Florida Statutes (1985), is constitutional. Therefore, the trial court erred when it refused to require respondents to comply with the requirements of the statute.
We must also reject the trial court's finding that the service of a malpractice complaint will satisfy the statutory notice requirement. Respondents urge that we adopt this alternate position if we uphold the constitutionality of the statute, and that we simply direct the trial court to "abate" the complaint for ninety days. Such a conclusion was implicitly repudiated by the court in Public Health Trust v. Knuck. Instead, we must presume that the legislature meant what it said when it distinguished the filing of a complaint from the furnishing of a prefiling notice. In this case, we might question whether any useful purpose would be served by requiring on remand that respondents supply petitioners with an additional written notice. Be that as it may, and even though petitioners now have actual notice of respondents' intentions, we cannot authorize revival of the complaint because, as petitioners point out, it fails to satisfy the requirements of section 768.495, Florida Statutes (1985), and is subject to timely challenge on these grounds. Accordingly, we cannot simply abate what is, for all intents and purposes, a nonexistent lawsuit; therefore, we quash that portion of the trial court's order which directs petitioners to answer the complaint.
Finally, we hold that certiorari is the appropriate remedy in this case because without this relief petitioners will suffer irreparable harm that cannot be remedied by direct appeal. Conceivably, if respondents were to prevail in this proceeding, they might prevail at trial and obtain a judgment against petitioners. On appeal if that judgment was determined to be the product of a fundamentally fair trial, an argument could be made that no useful purpose would be served in remanding the case because cost-saving pretrial procedures were not followed. Therefore, for petitioners to receive the benefits conferred upon them (and, in the estimation of the legislature, upon the citizens of Florida) by the statute, it is necessary and appropriate for us to intervene at this juncture. We recognize, of course, that the mere expense of an unnecessary trial ordinarily would not warrant our issuance of a writ of certiorari. Whiteside v. Johnson, 351 So.2d 759 (Fla. 2d DCA 1977). This rule of law, however, generally comes into play where the error complained of can be remedied by direct appeal. Wright v. Sterling Drugs, Inc., 287 So.2d 376 (Fla. 2d DCA 1973). As we have said, relief by direct appeal would be no relief at all in this case. Moreover, there is precedent for our early intervention where a departure from the essential requirements of law is found to exist and numerous similar cases, involving identical legal issues, may also be pending or forthcoming. *588 See, e.g., State Road Department v. Shell, 122 So.2d 215 (Fla. 2d DCA 1960); Rich v. Harper Neon Co., 124 So.2d 750 (Fla. 2d DCA 1960). We think that is the case here. Further, in News-Press Publishing Co. v. Gadd, 388 So.2d 276 (Fla. 2d DCA 1980), appeal after remand, 412 So.2d 894 (Fla. 2d DCA 1982), we approved early intervention by means of certiorari based on a legislative policy favoring the expedition of proceedings involving media access to public records. We believe the instant case presents a situation involving a similar perception of urgency on the part of the legislature.
The petition for writ of certiorari is granted and this case is remanded to the trial court for further proceedings consistent with this opinion.
LEHAN and HALL, JJ., concur.